UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LAZARO REYES HERNANDEZ,

         Petitioner,

    v.

WARDEN, FLORIDA SOFT SIDE
SOUTH DETENTION FACILITY,
US ATTORNEY GENERAL,

         Respondents.

Case No. 2:26-cv-1910-KCD-KRH

_____/

## **ORDER**

Petitioner Lazaro Reyes Hernandez is a Cuban citizen with a final order of removal. (Doc. 7-1.)[1] Last year, he was detained by U.S. Immigration and Customs Enforcement ("ICE"). He now seeks a writ of habeas corpus under 28 U.S.C. § 2241, challenging the legality of his continued custody. (Doc. 1.)

The background of the dispute is straightforward. Hernandez entered the United States in 2007. He was later convicted of money laundering and sentenced to prison. Removal proceedings were started, and in 2024, an immigration judge ordered him back to Cuba. (Doc. 7-1.) When that removal did not come to fruition, Hernandez was placed on an order of supervision.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

On December 6, 2025, Hernandez attended a routine ICE check-in, was detained, and his supervision was revoked. This petition for writ of habeas corpus followed. Hernandez claims ICE tried to remove him to Mexico, but he was rejected due to medical issues.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

The statutory framework for removal works like this: when a noncitizen's removal order becomes final, like here, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

2

But as the Supreme Court explained in *Zadvydas v. Davis*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. 678, 699 (2001). And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id*.

Applied here, Hernandez satisfies the initial temporal requirement. ICE took him into custody over six months ago. Because the period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Hernandez has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. He states that he has received no indication

3

that ICE will remove him—no documents, no travel papers, and no departure date. (Doc. 1-1 at 1.) Coupled with the prior removal attempt and his Cuban citizenship, those facts are enough.

The burden thus shifts to the Government to rebut Hernandez's showing, but they fail to do so. *Akinwale*, 287 F.3d at 1052. This outcome should come as no surprise—the record offers no documents, no diplomatic agreements, and no concrete evidence that Hernandez will be removed in the near future. (Doc. 7.) Instead, the Government submitted a declaration from Aiden Agudelo, a deportation officer, alleging that Hernandez was taken to the southern border, but he refused to get dressed and get off the bus. (Doc. 10-1.) Yet the Government does nothing to respond to Hernandez's allegation that he was rejected for medical reasons. ICE offers nothing to show that Hernandez's acceptance into Mexico is likely. Indeed, not even a rough estimate of how long those procedures will take is offered. ICE must still notify Mexico of Hernandez's upcoming removal, and, if accepted, it will proceed. (Doc. 10-1.) Because ICE offers no concrete evidence that removal is likely (or even possible) in the near future, Hernandez must be released.

It is easy to see why this outcome might cause unease. Hernandez is a convicted criminal. Yet, because the Government is completely unable to effectuate his removal, he has been allowed to live in this country for decades without facing the ultimate immigration consequence. But this Court is

bound by the law. And the law is clear: the Government cannot lock individuals in a cell indefinitely as a workaround for a stalled deportation process, nor can it use indefinite detention simply to placate popular opinion. *Zadvydas*, 533 U.S. at 659. The Constitution cannot be ignored just because the facts are frustrating. If there is a flaw in a system that leaves convicted criminals in a state of perpetual immigration limbo, the remedy lies in the halls of Congress or with the Executive branch—not with a federal judge.

### III. Conclusion

Because the Government cannot show any real prospect of deportation, the Court finds no significant likelihood that Hernandez will be removed in the reasonably foreseeable future. He is therefore entitled to release from ICE custody under *Zadvydas*. But that release is not a free pass—he remains subject to the strict conditions of his order of supervision. To the extent Hernandez's pro se petition raised any other claims, they are denied. He is entitled to no other relief from the facts presented.

Accordingly, it is **ORDERED:**

1. The Petition for Writ of Habeas Corpus (Doc. 6) is **GRANTED** as set forth above.

2. Respondents are ordered to **RELEASE** Petitioner Lazaro Reyes Hernandez from custody within 48 hours of this Order under the prior conditions of supervision, which Petitioner must continue to comply with.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**ORDERED** in Fort Myers, Florida on June 25, 2026.

Kyle C. Dudek
United States District Judge